# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| AILEEN MACGREGOR, | NO. C11-1024-RSM-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Aileen MacGregor appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

## I.    FACTS AND PROCEDURAL HISTORY

At the time of her administrative hearing, plaintiff was a 49 year-old woman with a GED degree. Administrative Record ("AR") at 37, 39. Her past work experience includes employment as a bartender, cashier and stocker. AR at 30. Plaintiff was last gainfully employed in 2004. AR at 39.

REPORT AND RECOMMENDATION - 1

On June 19, 2006, plaintiff filed a claim for DIB, alleging an onset date of July 31, 2004. AR at 24. Plaintiff asserts that she is disabled due to thoracic facet arthropathy and obesity. AR at 26.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 24. Plaintiff requested a hearing which took place on April 2, 2009. AR at 33. On May 20, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 24-32. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. MacGregor bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

REPORT AND RECOMMENDATION - 3

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On May 20, 2009, the ALJ issued a decision finding the following:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2005.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 31, 2004 through her date last insured of September 30, 2005.

3. Through the date last insured, the claimant had the following severe impairments: thoracic facet arthropathy and obesity.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can never climb ladders, ropes, or scaffolds; she can only occasionally climb ramps or stairs or balance, stoop, kneel or crawl.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1959 and was 45 years old, which is defined as a younger individual age 18-44, on the date last insured. The claimant subsequently changed age category to a younger individual age 45-49.[2]

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant could have performed.

AR at 26-32.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in making an adverse credibility assessment?

2. Did the ALJ err in her RFC assessment?

3. If the ALJ erred, should this matter be remanded for an award of benefits?

Dkt. No. 14 at 1.

## VII. DISCUSSION

A. <u>The ALJ Did Not Err in Her Credibility Assessment</u>

*1. Standard for Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the

REPORT AND RECOMMENDATION - 6

claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### *2. Basis for ALJ's Decision on Credibility*

The ALJ found that plaintiff's statements concerning the "intensity, persistence and limiting effects" regarding her symptoms were not credible to the extent that they exceeded the sedentary level RFC. AR at 29. She supported this conclusion because she found (1) some test results could not be taken at face value, because plaintiff was noted to engage in inconsistent behavior and effort on testing; (2) her claims were inconsistent with the objective evidence that showed only of a mild impairment; (3) plaintiff's claims were controlled by medication; (4) plaintiff was able to go on vacations and enjoy activities of daily living inconsistent with her claimed limitations; (5) plaintiff's work history indicates a lack of desire to work; and (6) plaintiff's RFC was consistent with the medical evidence of record. AR at 29-30.

Plaintiff asserts the ALJ erred because the ALJ described her functioning at the time of the hearing, and not as of the date last insured. Dkt. 14 at 6-8. In addition, plaintiff argues that the reasons provided by the ALJ were not legally sufficient. Dkt. 14 at 8-12.

### *3. The ALJ Did Not Err*

Plaintiff's first argues that in her decision, the ALJ erred by citing plaintiff's testimony which focused on her current condition, rather than her condition pre-DLI. Plaintiff's DLI was September 30, 2005. AR at 26. The administrative hearing took place on April 2, 2009. AR at 33. In the decision denying benefits, the ALJ stated "[t]he claimant's testimony focused mostly on her current functioning. She testified that she could not sit more than 40 minutes to an hour at a time, could not lift more than ten pounds and could not stand or walk for more than an hour at a time." AR at 29.

This argument might have possible merit, if the ALJ ignored the pre-DLI evidence of record, or if plaintiff claimed that she had somehow recovered, so that her current condition did not reflect appropriately on her conditions pre-DLI. However, neither of these events occurred. First, the issues that the ALJ cited to find plaintiff less than credible occurred during the relevant period at issue. For example, the ALJ noted that plaintiff skipped 14 of her 29 physical therapy appointments in 2005-2006, despite her testimony that she had never missed an appointment. AR at 29, 293-94, 47. She was evaluated as being capable of handling sedentary work, which is consistent with the ALJ's finding. AR at 307, 295, 294. In addition, she reported to the therapist that she could not lift 10 pounds during her evaluation in February 2006, even though the therapist observed her retrieving 10 pounds of paper from a cabinet just prior to the evaluation. AR at 294. Second, the plaintiff does not claim that her condition was materially worse at the point of her DLI. Indeed, Dr. Wagner found that her condition deteriorated after her DLI. AR at 30. She claims that her limitations have remained consistent.

Dkt. 14 at 8. Accordingly, the fact that the ALJ stated that some of her testimony at the hearing realted to her current limitations rather than the pre-DLI time period does not warrant remand.

The reasons provided by the ALJ to discount plaintiff's credibility are legally sufficient and are supported by substantial evidence in the record. The ALJ first found that plaintiff's statements of her limitations "cannot be taken at face value because she has been noted to engage in inconsistent behavior and effort on testing." AR at 29. Failure to give maximum or consistent effort during a physical capacity evaluation is evidence of a lack of credibility. *Thomas*, 278 F.3d at 959. Moreover, exaggeration of limitations is a specific and convincing reason to discount a plaintiff's credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The record of plaintiff's failure to attend to her physical therapy appointments and her exaggeration of the weight she could lift, when she was actually observed lifting more, constitutes substantial evidence, as that term is defined, to support the ALJ's finding of failure to give maximum effort and exaggeration of symptoms.

Inconsistent statements provide a basis to draw an adverse credibility determination. *Thomas*, 278 F.3d at 959. Plaintiff's testimony that she had never missed any physical therapy appointments is in direct contrast with the medical records, indicating that plaintiff missed 14 appointments.

Inconsistencies with objective medical evidence provide a basis for an adverse credibility determination. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The medical evidence of record generally reveals mild impairments as found by the ALJ. AR at 29. This was shown by the MRI of thoracic spine in October 2004 (AR at 191), x-rays of the thoracic and lumbar spine that were interpreted as normal in June 2005 (AR at 292), and an August 2005 MRI that showed only mild degeneration (AR at 303).

REPORT AND RECOMMENDATION - 9

The effectiveness of treatment and pain medication is relevant to a determination of the severity of symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). To the extent that the ALJ relied upon discontinuing morphine due to symptom abatement, the ALJ erred. Instead, plaintiff began with OxyContin, because morphine made her drowsier, and OxyContin could be used as a substitute. However, the error is harmless. Plaintiff still reported that her pain was down to a 2 to 3 level when using the medication on a 1 to 10 scale, and her doctor reported the medication was working well. AR at 260.

Activities of daily living that indicate a functional capacity greater than that reported is a basis for discounting a plaintiff's credibility. *Rollins*, 261 F.3d at 857. The ALJ cited plaintiff's ability to go on a vacation and to enjoy her activities of daily living as reported by Dr. Kennedy. AR at 29, 260. Plaintiff does not challenge the ALJ's reliance on her daily activities as a basis for discounting her credibility.

Finally, poor work history is a specific reason to discredit a plaintiff's willingness to work. *Thomas*, 278 F.3d at 959. The ALJ relied upon plaintiff's past earnings that reflected "very little past work with minimal earnings and many years with no earnings." AR at 30. This conclusion was also supported by plaintiff's testimony that she did not work during a period of time, because "[t]o tell the truth I really didn't have to at the time. I was okay." AR at 43. She was okay because she was receiving child support and was staying home with her son, which was due to expire the month after her administrative hearing. *Id.*

The ALJ did not err when he found plaintiff's testimony to be less than fully credible about her functional limitations and the severity of her impairments.

B.  The ALJ Did Not Err in Her RFC Determination

The ALJ found that plaintiff retained the residual functional capacity to perform sedentary work, except that she could not climb ladders, ropes or scaffolds and could only

occasionally climb ramps or stairs or balance, stoop, kneel or crawl. AR at 28. "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at 1. The RFC assessment must be based on all of the relevant evidence in the case record, such as: medical history; the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., side effects of medication); reports of daily activities; lay activities; recorded observations; medical source statements; effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from work attempts; need for structured living environment; and work evaluations. SSR 96-8p.

Plaintiff argues the ALJ erred by failing to take into account sitting limitations assessed by Ms. Owens, an occupational therapist. Dkt. 14 at 12-13. In February 2006, Ms. Owens noted plaintiff's poor attendance in the work conditioning programs, and indicated that her sitting capacity was "45-60 minutes at a time." AR at 293. Ms. Owens also recommended that plaintiff be discharged from the physical therapy program and that she had the physical ability to engage in sedentary work on a full time basis. AR at 294. Mark Wagner, M.D. also opined that plaintiff was capable of performing work on a sedentary level. AR at 278.

Sedentary work only requires that an individual be capable of sitting for 6 hours in an 8-hour workday. SSR 83-10, *available at* 1983 WL 31251 at *5 (Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8 hour workday."). There is no indication that Ms. Owen and Dr. Wagner were unaware of the physical demands required by a sedentary work level when they both opined that plaintiff was physically capable of performing sedentary work.

Plaintiff argues that ALJ did not take into account the need to change positions when she posed a hypothetical to the Vocational Expert ("VE"). However, this is not quite accurate. The VE testified:

> Q: Let me modify that hypothetical. Let's add to that a sit/stand option where the person can either sit, stand, or walk at about one hour at a time and then after that would need to change positions for a shorter period of time and then can go back to whatever they were doing.
>
> A: Right.
>
> Q: Would that impact the jobs that you've identified?
>
> A: I think with – no, with the explanation that any job I cited or other sedentary jobs that I come up with, no, as long as the break from sitting after an hour was no more than say – was say maybe less than five minutes, just a couple minutes at a time and then they could go back to sitting for another hour before they take their--
>
> Q: Okay
>
> A: --normal break.

AR at 57-8.

The VE was examined further on the sit/stand option and testified:

> I would say these sedentary jobs, they're set up for being typically seated workstations, and it's hard to stay productive when you're not seated unless you're like bend over, and that's kind of unreasonable. So in general I would say if it's more than say five minutes after an hour of sitting, I mean, there could be some times where in the natural course of the day they might be on their feet more than five minutes, but there would be periods of time where say if you need to be sitting for an extended period of time to be productive but if you need to take a break, then maybe up to five minutes would be okay.

AR at 62. The VE then testified that if additional time were needed, it would not preclude work, but plaintiff might have to seek a modification or accommodation for more stretching. AR at 63. Plaintiff argues that means that the ALJ erred when determining her RFC. It does not.

REPORT AND RECOMMENDATION - 12

There is nothing of record indicating that plaintiff required more than 5 minutes every hour that the VE said would be routinely tolerated by employers. As noted above, Ms. Owen, an occupational therapist, who opined about the sitting limitation, said plaintiff was capable of performing at a sedentary level of work. Dr. Wagner agreed with this on two separate occasions. There is no reason to believe that they were unfamiliar with workplace limitations regarding need to shift positions and stretch when they made this determination. In short, there is nothing in the record that would indicate that plaintiff would require more than 5 minutes per hour to move or shift positions, other than plaintiff's testimony, which was found to be less than credible. The ALJ did not err in determining plaintiff's RFC.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be AFFIRMED and this case DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 6th day of March, 2012.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge